IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CORBETT L. LANTIS**, | Case No. 6:12-cv-00041-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MARION COUNTY**, *et al.*, | |
| Defendants. | |

Corbett L. Lantis, 4350 Labish Garden Road, N.E., Salem, OR 97305, *pro se.*

Kirstin E. Lurtz, Marion County Counsel, 555 Court Street, N.E., P.O. Box 14500, Salem, OR 97309. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff, Corbett L. Lantis ("Lantis"), brings this action against numerous employees and contract staff of the Marion County Jail, the Marion County Work Center, and the Marion County Sheriff's Office. Lantis alleges violations of his Eighth Amendment and First Amendment rights, his rights under Article I, section 16 of the Oregon Constitution, as well as violations of the Vocational Rehabilitation Act of 1973 ("Rehabilitation Act"), the Americans with Disabilities Act ("ADA"), and Or. Rev. Stat § 659.100. Defendants are Marion County, Marion County Sheriff Jason Myers, Marion County Jail Commander Sheila Lorance, Marion

County Sergeant Dale Bradley, Marion County Deputy Sheriff Troy Guest, and John Doe Medical Staff 1-4 (collectively "Defendants"). Defendants have moved for summary judgment. For the reasons stated below, the Court grants Defendants' motion.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted). A court must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

## FACTUAL BACKGROUND

The Marion County Sheriff's Office ("MCSO") operates the Marion County Jail ("Jail") and the Marion County Work Center ("Work Center"), which functions as a transition center for inmates between serving time at the Jail and spending time under the supervision of the Marion County Parole and Probation Division. From February 8, 2011 to February 13, 2011, Lantis was

housed at the Jail. On either February 12 or 13, 2011, Lantis was transferred to the Work Center, where he remained until March 10, 2011. On March 10, 2011, Lantis was moved back to the Jail, where he remained until May 17, 2011, when he was transferred to the custody of the Oregon Department of Corrections.

Lantis suffers from Hodgkin's disease, also known as Hodgkin's lymphoma, a type of cancer. Upon his arrival at the Jail, Lantis informed members of the Jail staff about his disease and the medications he was taking at that time. Lantis informed four unidentified members of the medical staff at the Jail several times that damage to his endocrine system caused by the treatments for his Hodgkin's disease made testosterone and multiple other medications "vital to his health." Despite this information, the medical staff did not provide Lantis with testosterone.

On February 13, 2011, Lantis was assigned to Defendant Troy Guest's ("Guest") work crew at the Work Center, where Lantis worked until March 10, 2011. The Work Center provides minimum-security supervision over inmates to prepare them for release to the community. At the Work Center, residents are expected to work, either at their own jobs, or by performing community service. The Work Center has a "pass" system in place, whereby inmates may apply for permission to leave the Work Center on a short term basis. Through this pass system, an inmate may leave the Work Center for "appropriate purposes," such as employment, medical appointments, and shopping. Unlike in the Jail, Work Center inmates are responsible for coordinating their own medical care, including payment for treatment. Therefore, if an inmate expresses an inability to pay for his medical care he may be reassigned to the Jail, where medical care is no longer the inmate's financial responsibility and is provided by trained medical staff.

On February 25, 2011 and March 1, 2011, Guest authorized passes for Lantis to pick up his prescriptions. On March 10, 2011, Lantis again requested a pass from Guest for the purpose

of going to the West Salem Medical Clinic, Shopko, and Dollar Tree to get his testosterone and other medications. Guest denied Lantis's request. Guest states that he denied Lantis's request because Lantis could not provide an explanation for why he did not pick up all necessary medication on his two previous approved leaves. In response to the pass denial, Lantis asked to file a formal grievance with Guest, to which Guest responded by threatening to file a disciplinary report against Lantis. When Lantis told Guest that he could not work because of his illness, Guest informed Lantis that he was fired from his work crew and charged Lantis with two Work Center rule violations: (1) "behavior that seriously disrupts routine facility operations," and (2) "refusing to obey an order." Lantis immediately appealed Guest's denial of the pass to Defendant Dale Bradley ("Bradley"), a Sergeant in the Institutions Division and the primary supervisor at the Work Center.

In response to Lantis's appeal, Bradley examined Lantis's medications and found four prescriptions, none of which were testosterone and all of which were dispensed on Lantis's previous visit to the pharmacy on February 25, 2011. Lantis informed Bradley that he needed the third pass to obtain testosterone, but was unable to afford it, and that he was too infirm to work without the testosterone. Bradley determined that Lantis was abusing the pass system by requesting leave to visit the pharmacy on March 10, 2011 when "[Lantis] had no intention to make any purchases there." Bradley also decided that Lantis needed to return to the Jail because Lantis "refused to" work and the Work Center could not adequately attend to his medical needs.

Subsequently, Lantis requested an administrative review of his rule violation charges, and Deputy Derek Hayman ("Hayman") conducted a hearing on March 17, 2011. The Hearing Report shows that Hayman found Lantis guilty of disruptive behavior and not guilty of refusing to obey an order. The Hearing Report also upheld Lantis's reassignment from the Work Center to

PAGE 4 – OPINION AND ORDER

the Jail based on Lantis's inability to receive appropriate medical care at the Work Center. As further explanation for the reassignment, the Hearing Report found that Lantis should not have been argumentative with the deputies.

Upon his return to the Jail, Lantis continued to inform the medical staff of his need for testosterone and the negative effects of not having it. Additionally, Lantis advised the medical staff to contact his physician regarding his need for testosterone. During the time that Lantis was in custody, Marion County contracted with ConMed Inc., for the provision of physician services at the Jail. The nurses at the Jail, unlike the physicians, are Marion County employees. Marion County personnel do not supervise or direct the provision of medical care to inmates. When Lantis was at the Jail, ConMed physicians conducted all examinations and made decisions regarding the provision of his prescriptions. Nurses at the Jail did not prescribe medicine, but only administered medications ordered by a physician pursuant to the directions provided by that physician.

Lantis submitted numerous medical request forms and grievances regarding the medical staff's denial of his testosterone to Defendant Jason Myers ("Myers"), the Sheriff of Marion County, and Defendant Sheila Lorance ("Lorance"), employed by MCSO as the Commander of the Institutions Division. Lantis asserts that Myers and Lorance refused to acknowledge the seriousness of his medical condition and continued to deny him testosterone. Lantis further asserts that Meyers and Lorance denied his grievances and did not take any action against the medical staff. Lantis states that because of the denial of his testosterone, in the three months he was incarcerated at the Jail, he fell out of his cell multiple times, struck his head and body on objects in his cell, experienced dizziness, low blood pressure, poor appetite, fatigue, personality changes, psychological changes, and lost 50 pounds.

PAGE 5 – OPINION AND ORDER

On May 17, 2011, Lantis was transferred to the custody of the Oregon Department of Corrections. Lantis was released from the custody of the Oregon Department of Corrections on March 23, 2012.

## ANALYSIS

### A.  Or. Rev. Stat. § 659A.800[1]

Or. Rev. Stat. § 659A.800 describes the enforcement powers of the Oregon Bureau of Labor and Industries ("BOLI") regarding unlawful employment practices. Or. Rev. Stat. § 659A.800. Section 659A.800 defines the scope of the powers and duties of BOLI, and subsequent sections provide the remedies and procedures regarding unlawful employment actions. Because Lantis was never employed by any of the Defendants, Or. Rev. Stat. § 659A.800 is inapplicable to Lantis's allegations. Thus, even under the liberal *pro se* pleading standards, Lantis cannot bring a claim under Or. Rev. Stat. § 659A.800. Therefore, the Court grants the Defendants' motion for summary judgment on this claim.

### B.  The Rehabilitation Act and Americans with Disabilities Act

Lantis claims that Defendants Bradley and Guest denied him access to a doctor and disciplined him for his attempt to "obtain vital medicines." Lantis argues that this conduct violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794. [2]

---

[1] Lantis cites Or. Rev. Stat. § 659.100 in his complaint. Or. Rev. Stat. § 659.100, however, was renumbered to Or. Rev. Stat. § 659A.800 in 2001.

[2] Defendants correctly argue that Lantis cannot seek damages or injunctive relief pursuant to the ADA or the Rehabilitation Act against Defendants in their individual capacities. *See Eason v. Clark Cnty. Sch. Dist.*, 303 F.3d 1137, 1145 (9th Cir. 2002); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). The Eleventh Amendment, however, does not bar ADA or Rehabilitation Act suits against state officials in their official capacities for injunctive relief or damages. *See Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 791-93 (9th Cir. 2004). The Court interprets

"Title II of the ADA and § 504 of the [Rehabilitation Act] both prohibit discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *see* 42 U.S.C. § 12132; *see also* 29 U.S.C. § 794. In order to establish a claim under the ADA, a plaintiff must show that he: (1) "is an individual with a disability;" (2) "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)). To establish a claim under the Rehabilitation Act, a plaintiff must show that he: (1) is "handicapped within the meaning of the [Rehabilitation Act];" (2) is "otherwise qualified for the benefits or services sought;" (3) was "denied the benefit or services solely by reason of [his] handicap; and" (4) that "the program providing the benefit or services receives federal financial assistance." *Lovell*, 303 F.3d at 1052. In claims for compensatory damages under either the ADA or the Rehabilitation Act, the Ninth Circuit also requires that a plaintiff must show that a defendant had discriminatory intent. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998).

In determining whether a defendant acted with intentional discrimination towards a plaintiff because of his disability under the Rehabilitation Act or the ADA, the United States Court of Appeals for the Ninth Circuit applies the "deliberate indifference" standard. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *see Daniel v. Levin*, 172 F. App'x 147, 150 (9th Cir. 2006) (unpublished) (applying the "deliberate indifference" standard to the

---

Lantis's claims under the ADA and the Rehabilitation Act to be against the Defendants in their official capacities.

discriminatory intent requirement for ADA and Rehabilitation Act claims brought by an inmate).
A defendant acts with deliberate indifference only if: (1) the defendant has knowledge from
which an inference could be drawn that a harm to a federally protected right is substantially
likely; and (2) the defendant actually draws that inference and fails to act upon the likelihood.
*See Duvall*, 260 F.3d at 1138-39; *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th
Cir. 2004). The first element is satisfied when the public entity has notice that an accommodation
is required. *Duvall*, 260 F.3d at 1139. The second element is satisfied if the entity's "failure to
act [is] a result of conduct that is more than negligent, and involves an element of
deliberateness." *Id.* Under the second element, "a public entity does not 'act' by proffering just
any accommodation: it must consider the particular individual's need when conducting its
investigation into what accommodations are reasonable." *Id.* (footnote omitted).

For the purposes of this motion, the Court assumes without deciding that Lantis presents
sufficient evidence to create a genuine issue of material fact that he: (1) is an individual with a
disability; (2) was otherwise qualified for the benefits sought; (3) was either excluded from
participation in, or denied the benefits, of the Jail's services; and (4) such exclusion or denial was
by reason of his disability. *See Lovell*, 303 F.3d at 1052. Defendants Guest and Bradley do not
dispute that Lantis had a serious medical need, which needed accommodation; thus the first
element of deliberate indifference is met. *See Daniel*, 172 F. App'x at 149-50; Defs.' Mem., ECF
30-1 at 5.

Lantis fails, however, to present any evidence that would allow a rational juror to find
that the Defendants acted with deliberate indifference to his serious medical need. Before Guest
denied Lantis's request on March 10, 2011, he had granted two passes for Lantis to obtain
medication, on February 25, 2011 and March 1, 2011. Lantis was not denied access to

medication—he had four different prescriptions filled before March 10, 2011. When Lantis was denied the third pass, the four prescriptions in his possession reasonably lead Defendants to believe that Lantis's medical needs were being met. Moreover, Lantis told Defendants that he could not afford the testosterone. Because Guest and Bradley granted Lantis's first two passes, considered his third request, and sent him back to the Jail where he could obtain medical treatment free of personal cost, their actions were reasonable to accommodate Lantis's needs, not indifferent. *See Duvall*, 260 F.3d at 1138-40; *Daniel*, 172 F. App'x at 149-50. Because Lantis is seeking monetary damages, the intentional discrimination element is necessary to state a claim against Guest or Bradley under the Rehabilitation Act or ADA. *See id.* Lantis fails to raise a triable issue of fact as to Guest and Bradley's intentional discrimination, under the Rehabilitation Act or ADA. Therefore, the Court grants the Defendants' motion for summary judgment on Lantis's claim for damages under the ADA and Rehabilitation Act.

### C. Lantis's Claims Under the Eighth Amendment

The government has an obligation "to provide medical care to those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference to serious medical needs constitutes unnecessary and wanton infliction of pain, which is proscribed by the Eighth Amendment. *Id.* at 104. To establish deliberate indifference to a serious medical need, and thus an Eighth Amendment violation under 42 U.S.C. § 1983, a prisoner must satisfy "both the objective and subjective components of a two-part test." *Toguchi*, 391 F.3d at 1057 (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)). First, the plaintiff must show "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104). Second, the plaintiff must

demonstrate that the prison official "acted with deliberate indifference in doing so." *Toguchi*, 391 F.3d at 1057 (citation and quotation marks omitted).

Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Jett*, 439 F.3d at 1096 (citation and quotation marks omitted). A plaintiff may show that a defendant's response to the need was deliberately indifferent by establishing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc).

### 1. Lantis's Claims against Defendants Bradley and Guest

Lantis argues that Defendants Bradley and Guest knew of Lantis's serious medical needs and refused to allow him access to testosterone medication, refused to provide medical care at the Work Center, and denied him access to his personal doctor. Because all parties agree that Defendants Guest and Bradley were aware of Lantis's serious medical need, the first prong is met. Thus, the Court turns to the question of whether Guest and Bradley were deliberately indifferent to Plaintiff's serious medical need. *See Toguchi*, 391 F.3d at 1057. Even viewing the record in the light most favorable to Lantis, there is no genuine issue of material fact as to whether Guest and Bradley were deliberately indifferent to Lantis's serious medical need.

Guest issued two passes to Lantis to pick up his medications, one of which he issued during a "no-pass" week that required the additional step of supervisor approval. On March 10, 2011, when Guest denied Lantis's request for a third pass, Lantis could not provide any explanation as to why he did not pick up all necessary medication on his two previous leaves. Guest's grant of the first two passes were reasonable measures to address Lantis's serious

medical needs. Guest's denial of the third pass was reasonable in light of Lantis's recent access to medication, during his trips on February 25, 2011, and March 1, 2011.

Lantis immediately appealed Guest's denial of Lantis's pass request to Bradley. In response to Lantis's appeal, Bradley examined Lantis's medications, and found four prescriptions, none of which were testosterone and all of which were dispensed on February 25, 2011. Lantis told Bradley that he needed the third pass for testosterone, but was unable to afford it. Lantis provides no evidence that he would have been able to get testosterone had the third pass been granted. Based on the medications in Lantis's possession, the prior two opportunities Lantis was given to see a doctor and get prescriptions and Lantis's inability to afford the testosterone, a reasonable trier of fact could not find that Bradley purposefully acted in deliberate indifference to Lantis's medical needs.

Moreover, Bradley's decision that Lantis needed to return to the Jail was reasonable in light of the lack of adequate medical care at the Work Center and Lantis's own claims that he was too infirm to work. Bradley argues that by returning Lantis to the Jail he facilitated the provision of any necessary medical care, without any additional costs to Lantis. Lantis does not provide any evidence from which a rational trier of fact could conclude that Bradley's recommendation that Lantis return to Jail was deliberate indifference in light of Lantis's medical needs that were going unfulfilled at the Work Center.

Further, there is no evidence in the record to create a genuine issue of material fact as to whether the decisions made by Guest and Bradley caused Lantis harm. *See Jett*, 439 F.3d at 1096 (stating that the second prong of the deliberate indifference test requires a showing of harm caused by the deliberate indifference). Lantis states that he lost weight and suffered physical and psychological side effects from a lack of testosterone. These "harms," however, occurred at the

PAGE 11 – OPINION AND ORDER

Jail, well after either Guest or Bradley stopped being responsible for decisions regarding Lantis's access to doctors or medication. Therefore, the Court grants the Defendants' motion for summary judgment on Lantis's Eighth Amendment claims against Bradley and Guest.

### 2.  Lantis's Claims against the Medical Staff

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege facts that "show a deprivation of a right, privilege or immunity secured by the Constitution or federal laws by a person acting under color of state law." *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (per curiam); *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). Thus, the Supreme Court has ruled that a plaintiff may not bring an Eighth Amendment claim under § 1983 against a privately-employed defendant. The Court reasoned that in the case of a privately-employed defendant, a prisoner does not "lack effective remedies" because state tort law provides an "alternative, existing process" capable of protecting the constitutional interests at stake in an Eighth Amendment claim, thus, the fact that private defendants are not subject to suit under § 1983 is justified. *Minneci v. Pollard*, 132 S. Ct. 617, 619, 623 (2012) (citation omitted). The existence of that alternative constitutes a "convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 552 U.S. 537, 550 (2007). For example, in *Correctional Services Corporation v. Malesko*, the Supreme Court refused to extend *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), to a private corporation that managed a federal prison. 534 U.S. 61, 70-73 (2001). The Court provided two reasons for this refusal: (1) that allowing a prisoner to bring a § 1983 claim against a private corporation would risk skewing relevant incentives provided by tort suits against private defendants; and (2) that even without the remedies provided by *Bivens,* a prisoner would not "lack effective remedies" because he can bring state tort law damages action against private individual defendants. *Id.*

Lantis argues that the medical staff at the Jail violated his Eighth Amendment rights by denying him "vital medications," even though they were aware of his serious medical condition. The physicians were the only medical staff responsible for decisions regarding the provision of prescription medications to Lantis, and the physicians were employed by ConMed, Inc., under contract with Marion County. Therefore, no Marion County employee was involved in the decision regarding Lantis's medication, including the administration of testosterone, while he was incarcerated at the Jail. Lantis presents no evidence to controvert Defendants' declarations that at all relevant times the physicians were private employees and solely responsible for making decisions regarding Lantis's medication. The physicians, as privately employed contractors cannot be held liable as state actors under § 1983. *See Malesko*, 534 U.S. at 70-73; *Minneci*, 132 S. Ct. at 623-24. Because the physicians cannot be subject to suit under § 1983 the Court grants the Defendants' motion for summary judgment as to Lantis's Eighth Amendment claim against the Medical Staff.

### 3.  Lantis's claims against Defendants Myers and Lorance

Lantis argues that Myers and Lorance violated his rights under the Eighth Amendment by taking no action against the medical staff who were allegedly indifferent to Lantis's medical needs. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Following the Supreme Court decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 677, (2009), a supervisor's culpability is also limited by his or her intent, for "each Government official . . . is only liable for his or her own misconduct." "For an official to be liable for another actor's depriving a third party of his constitutional rights, that official must have at least the same

level of intent as would be required if the official were directly to deprive the third party of his constitutional rights." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012); *see also Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) (finding that a supervisor is liable for constitutional violations of subordinates only if he "participated in or directed the violations, or knew of the violations and failed to act to prevent them").

Lantis argues that he filed grievances regarding the refusal of his testosterone medication against Myers and Lorance and that in response, Myers and Lorance were deliberately indifferent because they refused to acknowledge the seriousness of Lantis's medical condition and did not order the medical staff to provide Lantis with his medication. Because Lantis's claims for deliberate indifference are based on the denial of his testosterone, Lorance and Myers would need to be involved in the decision making for the administration of Lantis's medication, have control over the physicians responsible for the administration of his medication, or have known of an excessive risk to Lantis's health caused by the denial of testosterone to be held liable as supervisors. *See Toguchi*, 391 F.3d at 1057-58 (finding that a prison official is deliberately indifferent only if he or she knows of and disregards an excessive risk to an inmate's health); *Starr*, 652 F.3d at 1207-08 ("The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or should have known would cause others to inflict a constitutional injury." (citation, quotation marks, and internal laterations omitted)).

Lantis fails to present evidence that either Myers or Lorance had any control over decisions regarding the administration of Lantis's medication. The only medical staff over which Lorance and Myers had supervisory control were the corrections nurses who are Marion County employees. The nurses were not responsible for decisions regarding the administration of

medication, and Lantis presents no evidence that the nurses were involved in the decision to refuse his testosterone. The privately employed ConMed physicians, who were responsible for making decisions regarding the administration of medication at the Jail did not consult with Myers or Lorance regarding medical decision making. Therefore, Myers and Lorance did not personally make medical decisions or have supervisory control over the physicians who were responsible for decisions regarding the administration of medication at the Jail. Further, Myers and Lorance did not have the control over the decision making regarding the administration of Lantis's medication that would be necessary for their inaction to meet the requisite intent for deliberate indifference. *Cf. Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (finding a genuine issue of material fact as to whether supervisors were deliberately indifferent when plaintiff submitted several grievances about the denial of a recommended hip surgery to wardens who personally reviewed medical orders and grievances and failed to act to prevent further harm).

Moreover, Lantis presents no evidence that his grievances showed Lorance and Myers that there was an excessive risk to his health or that Lorance and Myers were aware of any physical risks, potential or manifest, caused by the doctors' decisions to not provide Lantis with testosterone. Lantis presents no evidence that he was denied any or all medical care; rather he alleges that he was denied access to testosterone, and a mere difference in medical opinion is not sufficient to establish deliberate indifference. *See Fletcher v. Baca*, 2014 WL 293097, at *1 (9th Cir. Jan. 28, 2014) (upholding a grant of summary judgment when a prisoner failed to raise a genuine dispute of fact that a physician waited to administer a prescription until after confirmation that it had actually been prescribed to inmate); *Toguchi*, 391 F.3d at 1058 (finding that a prisoner must show that the course of medical treatment was medically unacceptable under

PAGE 15 – OPINION AND ORDER

the circumstances and chosen in conscious disregard to the prisoner's health). Lantis presents no evidence that the physicians' decision to deny him testosterone reached a level such that Lorance or Myers would have known of an excessive risk to Lantis's health and thus been required to take action contrary to the medical direction of the physicians.

Lantis fails to present any evidence that Lorance or Myers were involved in the determinations regarding the prescription of testosterone, he further fails to demonstrate that nurses over whom Lorance and Myers had supervisory control were responsible for making decisions regarding the administration of his medication. Additionally, Lantis fails to present evidence that Lorance or Myers should have known of an "excessive risk" to Lantis's health, which would have triggered a duty for Lorance or Myers to act contrary to the directions of the physicians. *See Toguchi*, 391 F.3d at 1057-58 (a prison official acts with deliberate indifference only if he or she knows of and disregards an excessive risk to the prisoner's health and safety; a mere difference in opinion is insufficient to establish deliberate indifference). Therefore, the Court grants the Defendants' motion for summary judgment on the Eighth Amendment claims against Myers and Lorance.

**D.  Lantis's Claim Under the First Amendment**

Inmates retain those First Amendment rights not inconsistent with their status as prisoners or with the penological objectives of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Included in these retained rights are an inmate's First Amendment "right to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "[P]urely retaliatory actions taken against a prisoner for having exercised those rights necessarily

undermine those protections" and thus "such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

In *Rhodes v. Robinson*, the Ninth Circuit set forth five basic elements necessary to bring a "viable claim of First Amendment retaliation" in the prison context: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." 408 F.3d at 567-68 (footnote omitted); *see also Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Lantis argues that: (1) Guest, a state actor, charged Lantis with two rule violations, "any behavior that seriously disrupts routine facility operations" and "refusing to obey an order," (2) because of (3) Lantis's request for a grievance against Guest, that (4) Guest intended to chill Lantis's First Amendment rights, and (5) that the violation write-up did not advance any reasonable or legitimate correctional goal.

An inmate's ability to file a grievance is well-established protected conduct under the First Amendment. *See Bruce*, 351 F.3d at 1288; *see, e.g.*, *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir.1995) ("[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes. That retaliatory actions by prison officials are cognizable under § 1983 has also been widely accepted in other circuits." (citation omitted)). Therefore, the first and third elements are clearly met, and the Court will focus its analysis on the remaining elements necessary to bring a successful First Amendment retaliation claim. *See Rhodes*, 408 F.3d at 567.

## 1.  Causation

To satisfy the causation requirement for a retaliation claim "on a motion for summary judgment, [plaintiff] need put forth evidence of retaliatory motive, that, taken in the light most

favorable to him, presents a genuine issue of material fact as to" the defendant's intent. *Brodheim*, 584 F.3d at 1271 (quoting *Bruce*, 351 F.3d at 1289). Lantis does not, however, present evidence beyond mere allegations that his request for a grievance caused Guest to charge him with two rule violations. Lantis argues that the violations were false disciplinary actions, but he also acknowledges that he was "wrote [*sic*] up for disobeying an order." Guest's declaration and the incident report provide evidence that Guest filed the violation complaints against Lantis because Lantis was abusing the pass system.

Moreover, Lantis was granted an administrative review hearing before the rule violations were finalized. At that hearing, Hayman found Lantis guilty of "any behavior that seriously disrupts routine facility operations." The fact that the violations were reviewed by a neutral arbiter, unaffected by Lantis's request for a grievance, before being finalized, diminishes any possible causal link between Lantis's protected actions and any adverse action resulting from Guest's filing of a rule violation. *See Pratt*, 65 F.3d at 808 (finding that a lack of knowledge about plaintiff's First Amendment actions by the officials responsible for the final decision regarding the adverse action weighed against plaintiff on the causation element). Lantis's statement that the "hearings officer found [Lantis] not guilty of the violation" is conclusively refuted by the findings in the Hearing Report and Bradley's Declaration. Thus, the speculative statements in Lantis's complaint, even viewed in the light most favorable to Lantis, do not present a triable issue of fact in light of the declaration, incident report, and Hearing Report that all show that the cause of the rule violations filed against Lantis was his abuse of the pass system. *See, e.g.*, *Pratt*, 65 F.3d at 808-09 (finding that although "timing can properly be considered as circumstantial evidence of retaliatory intent" it cannot surmount a lack of any other

PAGE 18 – OPINION AND ORDER

probative evidence). Therefore, Lantis fails to raise a triable issue of fact as to the causation element of his First Amendment retaliation claim.

### 2. Chilling Effect

An allegation that a person of ordinary firmness would have been chilled is sufficient to state a retaliation claim. *Rhodes*, 408 F.3d at 568. Lantis states in his complaint that Guest's actions were *intended* to "chill [Lantis's] First Amendment rights." The Ninth Circuit has suggested that a plaintiff may state a claim for First Amendment retaliation merely by alleging that a government official took actions *intended* to chill the plaintiff's exercise of First Amendment rights. *See Mendocino Envtl. Ctr. v. Mendocino Cnty.,* 192 F.3d 1283, 1300 (9th Cir. 1999). Because "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity," Lantis's decision to pursue an administrative review of the violations does not demonstrate that the filing itself would not chill a person of ordinary firmness. *Id.* Lantis does not have to demonstrate that his speech was "actually inhibited or suppressed." *See Rhodes*, 408 F.3d at 569 (quoting *Mendocino Envtl. Ctr.*, 192 F.3d at 1300). Therefore, a reasonable juror could conclude that Guest's adverse actions would have chilled a person of ordinary firmness.

### 3. Legitimate Penological Interest

Finally, to prevail on a retaliation claim, a prisoner must show that the challenged action "did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 568. There are four factors that a court must consider in determining whether a "proffered legitimate penological interest is reasonably related to a regulation which infringes on a prisoner's constitutional right." *Brodheim*, 584 F.3d at 1272 (applying these four factors and reversing a district court's grant of a motion for summary judgment for the defendants). The first factor requires "a 'valid, rational connection' between the prison regulation and the legitimate [and

neutral] governmental interest put forward to justify it" and that the connection between the regulation and the asserted goal not be "arbitrary or irrational." *Shaw v. Murphy*, 532 U.S. 223, 229-30 (2001) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). If the connection is "arbitrary or irrational" the regulation fails. *Id.* The second factor is the availability to inmates of "alternative means of exercising the right." *Turner*, 482 U.S. at 90. The third factor is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* The fourth factor is "the absence of ready alternatives" available to the prison for achieving the governmental objectives. *Id.*

The first factor weighs in favor of finding a legitimate penological interest because the need to preserve order, discipline, and institutional security are legitimate government interests. *See Storseth v. Spellman*, 654 F.2d 1349, 1355 (9th Cir. 1981). The pass system is a "privilege" at the Work Center, it allows inmates to leave the direct supervision of MCSO employees and enter the community unsupervised. Because the community is exposed to unsupervised inmates through the pass system, it is especially important that the system is well-controlled and that inmates are not allowed to abuse its benefits. Not only does the pass system ensure order at the Work Center, but it serves to control the interactions that inmates have with the public. Because Lantis has provided no evidence that could create a triable issue of fact as to the legitimacy of the Jail's need to preserve order, discipline, and security, this factor weighs in favor of granting summary judgment to Defendants.

The second factor weighs against finding a legitimate penological goal. Defendants have not offered evidence of any alternative means available to inmates to file a grievance. Lantis had the opportunity to appeal the pass denial to Bradley and to have an administrative hearing after

being charged with the rule violations, but neither of these opportunities offers an alternative to the ability to file a grievance in the first place.

The third factor, however, weighs in favor of finding a legitimate penological interest because a well-regulated pass system ensures the safety of the guards in that they will know where inmates are at all times, and the violations in response to an abuse of the pass system allow an efficient check on the inmate's ability to go out into the community unsupervised. As mentioned above, Lantis provides no evidence that he was unable to pursue filing a grievance against Guest after the rule violations or that the grievance process was in any way restricted; therefore, this factor weighs in favor of granting summary judgment to Defendants.

Finally, the fourth factor weighs in favor of finding a legitimate penological interest because there are few alternatives to filing a rules violation that could be more minimally restrictive to an inmate's rights, yet achieve the interest of maintaining security and order. Lantis has provided no evidence that could create a triable issue of fact under the first, third, and fourth *Turner* factors. Therefore, there is no genuine issue of material fact as to whether Guest's actions did not advance a legitimate correctional goal.

Failing to provide evidence to create a genuine issue of material fact on the legitimate penological interest element alone means that Lantis fails to raise a triable issue of fact for a successful First Amendment retaliation claim. Therefore, the Court grants Defendants' motion for summary judgment on Lantis's First Amendment retaliation claim.[3]

---

[3] In the alternative, Lantis's allegations may be construed as a claim that the adverse action, in retaliation to his grievance request, was being reassigned to the Jail. This allegation, however, does not raise a genuine issue of material fact as to a First Amendment retaliation claim because it was Bradley, not Guest, who decided that Lantis should return to Jail. Guest cannot be held liable for an action taken by Bradley and subsequently approved by Hayman. Additionally, Bradley states that he sent Lantis to the Jail so that he would have free medical care and that because Lantis was experiencing serious medical issues Bradley believed the Work

PAGE 21 – OPINION AND ORDER

**E.  Lantis's Claim that Marion County had a Practice or Custom that Violated Lantis's Constitutional Rights**

Municipalities are "persons" under 42 U.S.C. § 1983 and thus may be liable for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality, however, may not be sued under § 1983 based solely on an injury that was inflicted by its employees or agents. *Id.* at 694. Instead, it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible. *Id.* The Ninth Circuit has defined a policy as "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (per curiam) (citations and quotation marks omitted). A policy can be one of action or inaction. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992) (holding that a plaintiff may show that a course of inaction by decision makers amounts to a longstanding practice or custom or standard operating procedure of a public entity).

Lantis argues that Marion County violated his Eighth Amendment rights by disregarding his pleas for help, denying his grievances, and employing policies that caused denial of his medical treatment. To impose liability against Marion County for its failure to act, Lantis must

---

Center could no longer accommodate his needs. The need to provide Lantis with necessary medical care is a legitimate reason unrelated to Lantis's attempt to file grievances with Guest. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). The evidence demonstrates that Bradley's recommendation to reassign Lantis to the Jail from the Work Center, and Hayman's subsequent upholding of the reassignment were results of Lantis's guilty adjudication and his medical needs. Therefore, a reasonable juror could not conclude that Lantis's reassignment to the Jail was logically linked to his request for a grievance against Guest.

show: "(1) that a [c]ounty employee violated [the plaintiff's] constitutional rights; (2) that the [c]ounty has customs or policies that amount to deliberate indifference . . . ; and (3) that these policies were the moving force behind the employee's violation of [the plaintiff's] constitutional rights." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1193-94 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003). As discussed above, Lantis fails to raise a triable issue of fact that any Marion County employee violated Lantis's constitutional rights. Thus, an argument to impose liability on Marion County based on its inaction fails at the first requirement.

Moreover, Lantis fails to raise a triable issue of fact that Marion County has a "policy practice or custom of ignoring prisoner complaints concerning their medical needs." Lantis presents no evidence that Marion County took action, or made "a deliberate choice to follow a course of action," that caused a constitutional injury. *See Fairley*, 281 F.3d at 918 (citation and quotation marks omitted). In fact, the record demonstrates that Lantis was given multiple opportunities to get medication, and when his medical needs were no longer being met at the Work Center, he was transferred to the Jail. After being transferred back to the Jail, ConMed physicians were responsible for Lantis's medical care, and they were not under the supervision or direction of Marion County employees. Lantis offers no evidence to establish a genuine issue of material fact as to whether the MCSO officials made a deliberate choice to follow a course of action regarding his treatment. Further, as discussed above, Lantis fails to raise a triable issue of fact that he suffered a constitutional injury. Therefore, the Court grants Defendants' motion for summary judgment on Lantis's claims against Marion County alleging a policy or practice that violated his constitutional rights.

**F.  Lantis's Claim Under Article I § 16 Oregon Constitution**

Finally, Lantis argues that Defendants violated his rights under Article I, section 16 of the Oregon Constitution.[4] Although Lantis does not specifically identify which Defendant supposedly violated this constitutional provision, the Court, liberally construing Lantis's complaint, will address the claim for all named Defendants.

As with the Eighth Amendment to the United States' Constitution, "the phrase 'cruel and unusual punishments'" in Article I, § 16 of the Oregon Constitution "connotes a conscious choice on the part of prison officials to inflict punishment on an inmate." *Billings v. Gates*, 323 Or. 167, 176 (1996). "[T]he Eighth Amendment's 'deliberate indifference to serious medical needs' standard is the appropriate standard under Article I, section 16 [of the Oregon Constitution]." *Id.* at 180. "Article I, section 16, closely parallels the Eighth Amendment." *Id.* at 173. Therefore, because Lantis's claims under the Eighth Amendment fail against Defendants Myers, Lorance, Guest, and Bradley, his Article I, section 16 also fail for the same reasons, in that these Defendants did not act with deliberate indifference towards Lantis's medical needs. *See Swanson v. Coos Cnty.*, 2009 WL 5149265, at *5 (D. Or. Dec. 22, 2009) (finding that plaintiff failed on his Article I, section 16 of the Oregon Constitution claims for the reasons that plaintiff failed on his federal constitutional deliberate indifference claims); *see also Villarreal v. Thompson*, 142 Or. App. 29, 32 (1996) (applying the Eighth Amendment deliberate indifference standard to a habeas corpus claims brought under Article I, section 16 of the Oregon

---

[4] Or. Const., Art. I, § 16 provides: "Excessive bail shall not be required, nor excessive fines imposed. Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense. --In all criminal cases whatever, the jury shall have the right to determine the law, and the facts under the direction of the Court as to the law, and the right of new trial, as in civil cases."

Constitution). Therefore, the Court grants the Defendants' motion for summary judgment on Lantis's claims under Article I, section 16 of the Oregon Constitution.

## CONCLUSION

Defendants' motion for summary judgment (ECF 30) is GRANTED, and this case is dismissed.

**IT IS SO ORDERED**.

DATED this 13th day of May, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge